[Civ. No. 1271. Fourth Appellate District.—July 13, 1934.]

ALONZO BROOKS et al., Appellants, v. ANTONIO SESSAGESIMO, Respondent.

Percy C. Church and Edwin C. Jamison for Appellants.

David E. Peckinpah and Bert M. Green for Respondent.

BARNARD, P. J.—About 1 or 2 o'clock on the morning of April 14, 1932, one Joe Brooks, a colored man, broke into a chicken-house at the home of the defendant and while there was shot and killed by the defendant. The defendant at once reported the matter to the police authorities and an investigation was immediately made, the result of which

was that the defendant was not held or prosecuted. This action was brought by the heirs of the deceased to recover damages, it being alleged that the death was caused by the wilful act of the defendant. The court found in all respects in favor of the defendant, and, among other things, found as follows: "That on or about the 14th day of April, 1932, the defendant shot and killed Joe Brooks; that at the time said defendant shot and killed said Joe Brooks, said Joe Brooks manifestly intended by violence and surprise to commit a felony, and at said time, said Joe Brooks was committing a felony, to-wit, burglary, and said burglary was being committed by said Joe Brooks in the night-time, and that it was being committed upon the property and habitation of defendant. That it is true that defendant acted at all times in a careful and prudent manner and as a reasonable man would act under all the circumstances." From the ensuing judgment the plaintiffs have appealed.

It is first urged that the evidence is insufficient to support the finding that the homicide was justifiable. The respondent owned his own home in the city of Fresno. There was a fence along the alley at the rear of his lot and on the evening before the shooting occurred the gate in this fence was left shut. About twenty feet away from this fence there was a chicken-house and chicken-yard, in which were a large number of chickens. The door to the chicken-house was locked with a padlock. The respondent was awakened by the barking of his dog which was chained up in the back yard. He heard a noise coming from the direction of the chicken-house which sounded like something breaking and, after arming himself, went out to investigate. It was quite dark but he saw a man move at the chicken-house door, either just inside or just outside of the chicken-house. He also heard the chain on the chicken-house door rattle. He immediately fired three shots, one of which killed the deceased. He testified that he was afraid to call out or give a warning for fear the man he saw would kill him and that he had previously known a man who was killed after giving such a warning. When the officers arrived they found the door to the chicken-house broken, the body of the deceased just outside this door and what was apparently the intruder's hat inside of the chicken-house. The gate through the rear fence was found open.

The evidence supports the conclusion that the chicken-house in question was a building within the meaning of section 459 of the Penal Code. There is ample evidence that the deceased, at the time he was discovered by the respondent, was not only manifestly intending to commit a felony but that he was then actually engaged in committing such a crime. (Pen. Code, sec. 197.) The evidence justifies the inference that the respondent was actuated by more than a bare fear that a felony would be committed by the deceased, and that a reasonable person must have known that a felony was being committed. (Pen. Code, sec. 198.) There is also some evidence that the respondent was in fear of his life and it cannot be said, under the circumstances, that this fear was an unreasonable one. While no gun was found upon the deceased, an open pocket knife was found in his pocket. One who is committing a burglary is apt to be armed with a gun, and it is not unusual for such a person to shoot when caught in the act. It cannot be held as a matter of law that it was the duty of respondent to give the intruder the first opportunity to shoot by waiting to see whether or not he had a gun. The question before the trial court was one of fact and the evidence, with the reasonable inferences therefrom, is sufficient to sustain the findings.

The second point raised by the appellants is that the respondent was himself guilty of a felony at the time in question and that a homicide perpetrated while in the commission of a separate and distinct felony cannot be justified. This contention is based upon the claim that the respondent was not a citizen of the United States and that under section 2 of Act 1970, General Laws of California, he was guilty of a felony in that he was then in the possession of a firearm capable of being concealed upon the person. Not only is there no evidence that the barrel of the firearm used by the respondent was less than twelve inches in length but there is no evidence in the record that the respondent was not, at the time, a citizen of the United States. Upon cross-examination the respondent testified that he was born in Italy. The cross-examination stopped at that point and he was not asked whether he had been naturalized, and it is perhaps a fair inference that the question was not asked because it was known that the answer would be unfavorable. The respondent testified upon direct examination that he had

682

owned his home, where the shooting occurred, for more than twenty years.  Assuming that the burden was upon the respondent to show a justification for his act by a preponderance of the evidence there is no presumption that he was himself engaged in a criminal act and it could not be held, under the circumstances, that the burden rested upon him in a civil case to affirmatively prove his citizenship. Especially is this true when the point was not raised in the trial court, with an opportunity to meet the same.

The judgment is affirmed.

Jennings, J., concurred.

Marks, J., being absent, did not participate in this opinion.